# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-cr-443-2 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| DEONTAE WILSON, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On May 1, 2020, defendant Deontae Wilson ("Wilson") filed a *pro se* motion for compassionate release. (Doc. No. 72.) Plaintiff United States of America (the "government") filed an opposition to Wilson's *pro se* motion. (Doc. No. 74.) On May 6, 2020, the Court appointed Wilson counsel in accordance with General Order 2020-07. On May 21, 2020, counsel filed a motion on Wilson's behalf, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for "an order reducing [Wilson's] sentence and consider placing him on home confinement or any other suitable remedy based on the extraordinary and compelling circumstances that have presented through the COVID-19 pandemic as well as the impact on Mr. Deontae Wilson by his continued incarceration." (Doc. No. 75 at 594[1].) The government has responded to this latest motion. (Doc. No. 77.) For the foregoing reasons, the motions for immediate compassionate release are denied without prejudice.

---

[1] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

I. **BACKGROUND**

On October 30, 2019, Wilson entered a plea of guilty to a four-count indictment charging him with various drug-related crimes, including conspiracy to distribute and possess with intent to distribute cocaine base (crack), in violation of 21 U.S.C. § 846. (10-30-2019 Minutes; *see* Doc. No. 8 [Indictment].) On February 19, 2020, the Court sentenced Wilson to a term of imprisonment of 120 months, with credit for time served. (2-19-2020 Minutes; Doc. No. 55 [Judgement].) Wilson is currently serving his sentence at FCI Elkton and has a projected release date of January 4, 2028. *See* https://www.bop.gov/inmateloc/ (last visited 5-29-2020).

In support of his request for a compassionate release, Wilson notes that the conditions at FCI Elkton are dire as at least 119 inmates have tested positive for COVID-19, 8 staff personnel have tested positive, and 8 inmates have died. (Doc. No. 75 at 595, citing https://www.bop.gov/coronavirus/). This is of special concern to Wilson because he maintains that he has a mass on his kidney for which he asserts he has not been treated, and he has developed a wart on his foot that may require surgery and could expose him to serious infection. (*Id*. at 595, 603.) According to Wilson, these medical conditions put him at a heightened risk should he contract COVID-19. (*Id*. at 603, 605.)

The government argues that Wilson's motion should be denied because he has not exhausted his administrative remedies, and because Wilson has not made the requisite showing under 18 U.S.C. § 3582. (Doc. No. 77 at 612–13.) Additionally, the government notes that the Court does not have the authority to modify Wilson's sentence to home confinement. (*Id*. at 612,) Wilson concedes that he has not exhausted his administrative remedies but suggests that the Court can waive this requirement. (Doc. No. 75 at 599.) He further concedes that prior to

COVID-19, he did not present the extraordinary and compelling circumstances necessary for a compassionate relief, but he suggests that "with the COVID-19 pandemic and the highly contagious spread of the virus along with his associated risk factors, [he] does demonstrate a significant medical condition." (*Id.* at 598.)

## I. DISCUSSION

The sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington,* 584 F.3d 693, 700 (6th Cir. 2009). Rather, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston,* 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross,* 245 F.3d 577, 858 (6th Cir. 2001)). Title 18 U.S.C. § 3582(c)(1)(A) provides that courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. The amendment provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the prisoner's facility. 18 U.S.C. § 3582(c)(1)(A). No exceptions to the exhaustion requirement are listed in the statute.

Courts are split on whether a district court may waive the exhaustion and 30-day requirement due to the exigent circumstances presented by COVID-19. *Compare United States v. Zukerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) (waiving exhaustion requirement in light of COVID-19); *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (same); with *United States v. Raia*, 954 F.3d 594 (3rd Cir. 2020) (finding exhaustion requirement in § 3582 mandatory); *United States v. Alam*, No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020) (collecting cases finding that "a failure to satisfy 18 U.S.C. § 3582(c)(1)(A)'s filing requirements bars defendants from filing motions for compassionate release, and that the judiciary has no power to craft an exception to these requirements for defendants seeking release during the COVID-19 pandemic"); *see also United States v. Johnson*, No. RDB-14-0441, 2020 WL 1663360, at *2 (D. Md. Apr. 3, 2020) (holding that the "exhaustion requirements of § 3582(c)(1)(A) are jurisdictional in nature, and [the district] court may not expand its jurisdiction by waiving such requirements").

In *Raia*, the Third Circuit ruled that the fact that the petitioner did not wait the requisite 30-day period before seeking a compassionate release from the district "present[ed] a glaring roadblock foreclosing compassionate release[.]" *Raia*, . In so ruling, the court explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia [68 year old individual with diabetes and "heart issues"]. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and

4

> critical—importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the exhaustion requirement will be speedily dispatched in case like this one. Memorandum from Attorney Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. So we will deny Raia's motion.

*Id.*

As this Court has announced on numerous occasions, it agrees with the reasoning and logic of the Third Circuit, and, once again, joins the majority of courts that have held that the exhaustion requirements of § 3582(c)(1)(A) cannot be waived. *See United States v. Bolze*, No. 3:09-CR-93-TAV-CCS-1, 2020 WL 2521273, at *4 (E.D. Tenn. May 13, 2020) (noting that "most courts to examine the issue in [the Sixth Circuit] have agreed" that § 3582(c)(1)(A)'s exhaustion requirements cannot be waived (collecting cases). In addition to a lack of any indication in the language of § 3582(c)(1)(A) that the exhaustion requirement is discretionary or may be waived, the exhaustion requirement serves the important purpose of allowing the BOP—an agency that is in a better position to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release—the opportunity to address such requests in the first instance. Accordingly, the Court "will not read an exception into § 3582(c)(1) which does not exist[,] and Wilson's motion is denied for failure to exhaust his administrative remedies. *See Johnson*, 2020 WL 1663360, at *6 (denying inmate's motion for compassionate release for failure to exhaust administrative remedies).

Of course, even if Wilson could overcome this "glaring roadblock," Wilson has not even established that he is in the group of vulnerable individuals especially at risk for serious

5

complications due to COVID-19.[2] Wilson reports that he has a mass on his kidney for which he has not received treatment. This, however, is not a serious underlying medical condition that the CDC recognizes as presenting a heightened risk for severe illness from COVID-19. *See* CDC, *Coronavirus Disease 2019*," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed June 1, 2020).[3] This condition (which he concedes would not have risen to the level of an extraordinary and compelling reason for immediate release before COVID-19) would fall short of establishing a right to a compassionate release.

The wart on his foot, which Wilson claims has been diagnosed by Elkton medical staff as being the type that will require surgery to remove, likewise is not among the conditions that puts him at a heightened risk for COVID-19. Specifically, Wilson has not presented any documentation to substantiate his claim that surgery for his foot is imperative, nor has he established that the prospect of a future foot surgery will leave him especially vulnerable to the virus. *Compare United States v. Clark*, No. 3:13-cr-163-FDW-1, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (denying motion for compassionate release, in part, because inmate failed to substantiate claims that medical conditions placed defendant at a heightened risk with respect to COVID-19); with *Zuckerman*, 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020) (cited by Wilson and granting compassionate release where the defendant was 75 years old and had three

---

[2] Wilson cites to the recent civil rights action filed by the American Civil Liberties Union on behalf of a class of federal inmates at FCI Elkton, and, in particular, to declarations filed by experts in that action stressing the need to immediately release medically vulnerable inmates at FCI Elkton. (Doc. No. 75 at 602, citing *Wilson, et al. v. Williams*, No. 4:20-cv-794, Doc. No. 1 (N.D. Ohio Apr. 13, 2020)). The Court notes that Wilson was not identified in that action as one of the subclass of medical vulnerable inmates that is entitled to preliminary injunctive relief in the form of release or transfer to another facility. (*See* Case No. 4:20-cv-794, Doc. No. 35-1 [Notice].)

documented medical conditions that were COVID-19 risk factors identified by the CDC).

Further, other considerations would counsel against granting a compassionate release. In petitioning for release, Wilson focuses exclusively on his medical conditions and "the tragedies he has suffered throughout his life[.]" (Doc. No. 75 at 606.) Yet, the compassionate release statute directs courts to consider all of the 18 U.S.C. § 3553(a) sentencing factors "to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A). Other applicable factors would include the nature and circumstances of the offense, the history of the defendant, and the need for the sentence imposed (to reflect the seriousness of the offense; afford adequate deterrence; protect the public; and provide the defendant with needed education, training, and treatment). Here, although the sentence Wilson received was substantially below the advisory guideline range, he still received a 120 month sentence of which Wilson has only served a mere fraction.[4] (Doc. No. 71 (Sentencing Hearing Transcript ["TR"]) at 571–72.) Additionally, Wilsons' offenses involved serious drug charges, that included several drug sales out of his business. And Wilson has a significant criminal history, prompting this Court to find that he was a career offender under the sentencing guidelines. (*Id*. at 547.) The § 3553(a) factors do not support releasing Wilson nearly eight years early from his below-guideline sentence.

Finally, if the Court entertained Wilson's motion on the merits, it would be without

---

[3] According to Wilson, the mass on his kidney is causing him pain, needs further diagnosis, and requires medical attention. (Doc. No. 75 at 595.) Although the CDC recognizes "Chronic kidney disease being treated with dialysis[,]" as one of the risk factors, his condition does not fall within that category.

[4] In fact, three of the four cases that Wilson cites where courts waived the exhaustion requirement involved inmates who had three months or less left in their sentences. *See United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020) (three weeks remaining on sentence); *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (noting that "given the brief duration of Defendant's remaining term of imprisonment [11 days], the exhaustion requirement likely renders BOP incapable of granting adequate relief"); *United States v. Powell*, Case No. 94-cr-316, Doc. No. 98 (D.D.C. Mar. 28, 2020) (defendant had three months left on sentence).

authority to modify his sentence to provide for home confinement, as he requests, because that authority rests with the BOP. *See Tapia v. United States*, 564 U.S. 319, 331, 131 S. Ct. 2382, 180 L. Ed. 2d 357 (2011) (holding "[w]hen a court sentences a federal offender the BOP has plenary control, subject to statutory constraints, over 'the placement of the prisoner's imprisonment,' [18 U.S.C.] § 3621(b)]"); *see, e.g., United States v. Curry*, No. 6:06-082-DCR, 2019 WL 508067, at *1 (E.D. Ky. Feb. 8, 2019) ("Because the First Step Act [of 2018] gives the *Attorney General* [or the BOP by designation of the Attorney General] the discretion to determine if and when home confinement is appropriate, this Court does not have the authority to grant [home confinement].") (emphasis in original). The BOP has "begun immediately reviewing all inmates who have COVID-19 risk factors, as described by the CDC, starting with inmates incarcerated at . . . FCI Elkton . . . to determine which inmates are suitable for home confinement." Fed Bureau of Prisons, Home Confinement, www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp, April 5, 2020 (last accessed 6-1-2020).[5] The BOP has instructed that "inmates do not need to apply to be considered for home confinement" under this directive, but "any inmate who believes they are eligible may request to be referred to Home Confinement and provide a release plan to their Case Manager." *Id*. The fact that the BOP continues to identify vulnerable inmates for release to home confinement represents further proof that it is in the best position to quickly consider whether the

---

[5] According to the BOP's website, the BOP has already increased home confinement by more than 40% since March 2020. *Id*. In fact, under § 12033(b)(2) of the Coronavirus Aid. Relief, and Economic Security Act ("CARES" Act), Pub. L. No. 116-136, enacted March 27, 2020, the Attorney General now has the authority to "lengthen the maximum amount of time for which the Director [of the BOP] is authorized to place inmates in home confinement under 18 U.S.C. § 3624(c)(2) . . . ."

relief Wilson now seeks is appropriate.

## II. CONCLUSION

For the foregoing reasons, as well as the reasons in the government's briefs opposing compassionate release, Wilson's motions for a compassionate release are denied without prejudice.

**IT IS SO ORDERED**.

Dated: June 2, 2020

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**